IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

GERMAIN REAL ESTATE COMPANY, LLC;
and GM ENTERPRISES, LLC                                                                              PLAINTIFFS

v.                                            Case No. 5:13-CV-05069

HCH TOYOTA, LLC and
METROPOLITAN NATIONAL BANK                                                                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Currently before the Court are two motions to dismiss the amended complaint, filed by Defendants HCH Toyota, LLC ("HCH") (Doc. 20) and Metropolitan National Bank ("Metropolitan") (Doc. 22).  With the exception of a statute-of-limitations claim made by Metropolitan, both HCH and Metropolitan move to dismiss the amended complaint on the same grounds.  Plaintiffs Germain Real Estate Company, LLC ("GREC") and GM Enterprises, LLC ("GM") filed a joint response in opposition to both motions (Doc. 24), Metropolitan and HCH filed separate replies (Docs. 27 & 28), and GREC and GM filed a joint sur-reply (Doc. 30).  For the reasons discussed herein, Defendants' motions to dismiss (Docs. 20 and 22) are both GRANTED.

**I.      Legal Standard**

Metropolitan and HCH contend that the amended complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or, in the alternative, pursuant to Rule 12(b)(6) for failure to state a claim.

Dismissal of a case pursuant to Rule 12(b)(1) may occur through a challenge to the complaint "on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590,

593 (8th Cir. 1993). The basis for Defendants' claim that the Court lacks subject matter jurisdiction is the *Rooker-Feldman* doctrine. That doctrine states that "with the exception of habeas corpus petitions, lower courts lack subject matter jurisdiction over challenges to state court judgments." *Lemonds v. St. Louis Cnty*, 222 F.3d 488, 492 (8th Cir. 2000) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 316 (1923)). Defendants argue that Plaintiffs are asking this Court to review and overturn a state-court decision that resolved all of the claims at issue in the instant case. The *Rooker-Feldman* doctrine precludes a district court from reviewing any final state court decision on the merits, as "federal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court." *Id.* at 492 (citations omitted).

If the Court finds that the *Rooker-Feldman* doctrine does not apply and the Court properly has jurisdiction over this matter, Defendants move in the alternative for the case to be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. Rule 12(b)(6) affords a defendant an opportunity to test whether, as a matter of law, the plaintiff would be entitled to legal relief if everything alleged in the complaint were true and all reasonable inferences were made in favor of the plaintiff. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). In deciding a 12(b)(6) motion, the complaint should be construed liberally in the plaintiff's favor and "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rucci v. City of Pacific*, 327 F.3d 651, 652 (8th Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Although the general rule is that a court may not consider matters outside the pleadings in deciding a motion to dismiss, the Federal Rules of Civil Procedure allow an exception for "'matters

incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned' without converting the motion into one for summary judgment." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

As this case involves the interpretation of contracts, the Court observes that it may properly examine contract documents in deciding a motion to dismiss. *Stahl v. U.S. Dept. of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003). Under Arkansas law, which governs the interpretation of the contracts at issue in this case, if the meaning of a written contract is unambiguous and does not depend on disputed extrinsic evidence, the construction and interpretation of the contract are questions of law that may be decided by the court. *Duvall v. Massachusetts Indem. and Life Ins. Co.*, 295 Ark. 412, 413 (1988).

## II.  Background Facts

The underlying facts and request for relief in this breach of contract action were previously asserted in a state court case filed by Plaintiff GREC against Defendant HCH on October 25, 2012, in the Circuit Court of Benton County, Arkansas. *See* Doc. 13-5. Plaintiff GM was not a party to the state court action, but GM's authorized manager, Kenrick Morrand, was a plaintiff in state court, and Defendant Metropolitan eventually intervened in the state court action as a defendant. *See* Doc. 13-7.

GREC alleged in state court that it was granted an option to purchase certain real property located in Benton County, Arkansas, which housed a Toyota automobile dealership known as Northwest Arkansas Toyota ("the Property"). In the state court lawsuit, GREC alleged that it was

given its purchase option in 2005 in the context of a lease agreement entered into by GREC's affiliate, GM, and the Property's then-owner, H2 Holdings, LLC ("H2"). Soon after H2 transferred ownership of the Property in 2008 to its affiliate, HCH, the Property was mortgaged to Metropolitan. In 2012, GREC tried to exercise its purchase option but was refused. GREC then sued HCH for specific performance of the purchase option in state court.

As the state court case progressed, HCH and Metropolitan filed motions to dismiss the case for failure to state facts upon which relief could be granted, pursuant to Arkansas Rule of Civil Procedure 12(b)(6). The state court then held a hearing on these motions on March 1, 2013. Prior to the hearing, the parties had the opportunity to submit briefs to the court, and during the hearing, all parties were invited to present their respective oral arguments to the court. On April 9, 2013, the state court granted HCH and Metropolitan's motions to dismiss and entered an order of dismissal "without prejudice." (Doc. 13-8). The state court also made three findings in the dismissal order that, among other things, interpreted as a matter of law the meaning of certain contracts entered into by the parties over a five-year period.

On April 2, 2013, just days before the state court's order of dismissal was entered, GREC and GM filed the instant case in this Court against HCH and Metropolitan, asserting almost verbatim the same set of underlying facts that were pleaded in the state court lawsuit, relying on the same contracts between the parties concerning the Property, and again requesting specific performance of GREC's alleged purchase option.

Initially the Court observes that there are three major differences between the state court case that was filed in October 2012 and the federal case that was filed in April of 2013. First, GM was not a plaintiff in state court but is a Plaintiff in federal court. Second, Morrand was a plaintiff in

state court but is not a Plaintiff in federal court. Third, the only cause of action pleaded in state court was for specific performance of GREC's option to purchase, but in federal court other claims were added for deceit/constructive fraud, tortious interference with contract/business expectancy, civil conspiracy, and declaratory judgment, all arising from the same nucleus of operative fact as was alleged in state court.

To understand the rights and interests of the parties in the case at bar, the Court is called upon to interpret three contracts that have been attached to the pleadings in this case and were also a part of the state court record. The earliest-made contract at issue is a lease agreement executed on May 23, 2005, between GM, the Property's tenant, and H2, the Property's then-owner. *See* Doc. 18, pp. 13-36. As part of the consideration supporting the lease between GM and H2, it was agreed that after a five-year period of leasing, H2 would extend an option to purchase the Property to two parties related to GM: Morrand and GREC.

Morrand, who signed the 2005 as GM's "Authorized Manager," was granted the first option to purchase the Property. Morrand could exercise his option to purchase "at any time during the sixty (60) days period immediately following the Fifth Anniversary [of the commencement date of the lease]." *Id.* at p. 21. The party with the second option to purchase was GREC, described in the lease agreement as "a limited liability company affiliated with Tenant [GM]." *Id.* at p. 22. The 2005 lease stated that GREC's option to purchase could only be exercised after Morrand's option expired and "during the remaining period of the Original Term or the Renewal Term [of GM's lease]." *Id.*

According to the plain language of the 2005 agreement, all rights and obligations related to the two purchase options flowed from GM's tenancy. The agreement did not state that Morrand or

GREC had provided separate consideration for their options to purchase. Furthermore, the lease agreement vested GM—not Morrand or GREC—with the authority to investigate and accept all terms of sale involving the exercise of the purchase options; stated that if either purchase option were exercised, GM would be responsible for obtaining an appraisal of the premises to be sold and would have the authority to agree or disagree with H2 as to the amount of the appraisal; and obligated H2 to obtain "a commitment for title insurance by a company reasonably satisfactory *to Tenant [GM]*." *Id.* (emphasis added). In addition, in the context of exercising a purchase option, the 2005 lease gave GM the authority to object to title, with the caveat that if GM's objection were not satisfactorily addressed by H2, GM had the authority to terminate any pending obligation to purchase the Property. *Id.*

On June 10, 2008, H2 transferred its ownership interest in the Property to HCH. GM's lease was renegotiated to reflect that HCH was the new owner and landlord. *See id.*, pp. 37-45. Most of the provisions of the 2005 lease remained in effect after the 2008 revision was signed. The purchase-option provision, however, was specifically amended. *Id.* at pp. 38-39. The changes made to the original purchase-option paragraph of the 2005 lease included a new date for the commencement of Morrand's purchase option and a new purchase price for the Property. *Id.* at p. 39. GREC's second option to purchase was not specifically addressed in the 2008 revision, and the parties agreed that unless specifically modified, the remainder of the purchase-option paragraph of the original lease was to "remain in full force and effect." *Id.*

On June 19, 2008, HCH, the new owner of the Property, mortgaged it to Metropolitan. HCH, GM, and Metropolitan then entered into a "Subordination, Non-disturbance and Attornment Agreement" ("SNDA") to clarify how the existence of the new mortgage would affect the terms of

GM's lease.  *See* Doc. 13-3.  The SNDA stated that since the Property was now encumbered by a mortgage issued by Metropolitan, "[t]he Lease and all terms thereof, including, without limitation, *any options to purchase*, rights of first refusal, rights of set off, and any similar rights, are and shall be subject and subordinate to the Mortgage . . . ."  *Id.* at pp. 1-2 (emphasis added).  The SNDA provided that Metropolitan's mortgage was secured, in part, by HCH's assignment to Metropolitan of all rents and leases associated with the Property.  *Id.* at p. 1.

III.  Discussion

    A.  *Rooker-Feldman* Doctrine

HCH and Metropolitan both assert in their separate motions to dismiss that this Court lacks jurisdiction over the case due to the *Rooker-Feldman* abstention doctrine.  The *Rooker-Feldman* doctrine only applies in the limited circumstance in which a party "seeks to take an appeal of an unfavorable state-court decision to a lower federal court."  *Lance v. Dennis*, 546 U.S. 459, 466 (2006).  The doctrine bars a losing party in state court "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."  *Johnson v. De Grandy*, 512 U.S. 997, 1005-1006 (1994).  *Rooker-Feldman* abstention is not the same thing as issue preclusion or claim preclusion.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).  *Rooker-Feldman* abstention only applies when a party files a federal lawsuit complaining of injuries caused by a state court's judgment and invites the federal court to review and reverse the state court.  *Id.*

The amended complaint filed by GREC and GM does not even mention the state court proceedings that came before the instant one, nor does the amended complaint discuss any injuries

caused by the state court's judgment. *See* Doc. 18. Plaintiffs do not ask this Court to review the judgment of the state court. For these reasons, the narrow application of *Rooker-Feldman* abstention is improper here, and this Court will retain jurisdiction over this matter.

### B. Res Judicata and Collateral Estoppel

"[C]ongress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980). A comparison of the complaints filed here and in state court reveals that the two cases involve the same set of facts, the same contracts between the parties, and the same claim by GREC for specific performance. With the sole exception of Plaintiff GM, all the same parties in the case at bar were parties to the state court action.

Arkansas law bars the relitigation of a claim in a subsequent lawsuit when the first suit (1) resulted in a final judgment on the merits, (2) was based on proper jurisdiction, (3) was fully contested in good faith, (4) involved the same claim or cause of action, and (5) involved the same parties or their privies. *Powell v. Lane*, 375 Ark. 178, 184 (2008).

In examining these five res judicata factors, it is evident that the second and third factors are satisfied here, as GREC's legal right to exercise its option to purchase the Property was fully contested in state court and was based on the state court's proper jurisdiction. As for the fourth factor, this is also satisfied even though GREC asserts state law claims in the federal lawsuit that were not previously asserted in state court, including claims for constructive fraud, tortious interference, and civil conspiracy. These additional state-law claims, which purportedly arise from Defendants' alleged wrongdoing in failing to honor GREC's alleged purchase option, could have been asserted in state court, but GREC simply chose not to do so. According to the Arkansas Court

of Appeals, "[c]laim preclusion bars not only the relitigation of claims that were actually litigated in the first suit but also those that could have been litigated." *Sutton v. Gardner*, 2011 Ark. App. 737, *6 (Ark. Ct. App. 2011) ("Where a case is based on the same events as the subject matter of a previous lawsuit, claim preclusion will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies.").

The fifth factor in the res judicata analysis is also satisfied in the case at bar. This fifth factor provides that res judicata will apply when an earlier-decided action involves "the same parties or their privies" as the later-filed action. HCH and Metropolitan were defendants in state court and are Defendants in these proceedings. GREC was also a plaintiff in state court and is a Plaintiff here. The relevant issue, therefore, is whether Plaintiff GM, which was not a plaintiff in state court, was represented by or in legal privity with Morrand, who was a plaintiff in state court. "Privity of parties within the meaning of res judicata means 'a person so identified in interest with another that he represents the same legal right . . . .'" *Spears v. State Farm Fire and Cas. Ins.*, 291 Ark. 465, 468 (1987) (quoting *Missouri Pac. R.R. Co. v. McGuire*, 205 Ark. 658 (1943)).

There is substantial evidence from the pleadings in this case that Morrand and GM were in legal privity during the state court proceedings. First, the 2005 lease refers to GM as "Germain/Morrand Enterprises, LLC," and it further names Morrand as "an individual and related party of Tenant [GM]." (Doc. 13-1). More convincingly, Morrand signed both the 2005 and 2008 leases on behalf of GM as the company's "Authorized Manager." (Docs. 13-1 and 13-2). He also signed the SNDA on behalf of GM as the company's "President." (Doc. 13-3). Finally, the SNDA included a separate provision titled "Joinder," which was signed by Morrand and named him, individually, as a guarantor of GM's lease "to assume all of Tenant [GM]'s liability arising under

the Agreement . . . ." *Id.* at p. 7. The totality of the evidence therefore indicates that Morrand—the principal, president, authorized manager, and personal guarantor of GM—was in privity with GM in the state court action.

As for the first factor in the res judicata analysis, it states that in order to have preclusive effect, the earlier-entered judgment must be a final judgment on the merits. The Court concludes after careful consideration that this final factor is not satisfied, and thus res judicata cannot apply. Though HCH and Metropolitan argue that the state court's judgment should be treated by the Court as a final judgment due to the state court's findings regarding the construction and interpretation of the contracts at issue, the Eighth Circuit has definitively held that any dismissal "without prejudice," made pursuant to Arkansas Rule 12(b)(6), cannot be considered a final judgment for purposes of res judicata. *Percefull v. Claybaker*, 312 Fed. Appx. 827, 827 (8th Cir. 2008) (per curiam) ("Because the prior state court complaint was expressly dismissed without prejudice, we conclude that it was not a final judgment on the merits for purposes of res judicata.").

Defendants correctly point out that in some cases, a dismissal without prejudice may be converted into a dismissal with prejudice; however, this exception is reserved for a case in which a plaintiff has chosen to appeal the state court judgment, thus waiving his right to plead further. *See Sluder v. Steak & Ale of Little Rock, Inc.*, 369 Ark. 293, 298 (2006). Since GREC did not appeal the state court's judgment, the state court's dismissal order cannot be considered a final judgment under Arkansas law. *See Middleton v. Lockhard*, 344 Ark. 572, 578 (2001) (finding that dismissal without prejudice is not considered an adjudication on the merits under Arkansas law). For this reason, res judicata does not apply.

Turning to the question of collateral estoppel, also known as issue preclusion, this doctrine

"bars the relitigation of issues of law or fact actually litigated in the first suit, provided the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question." *Zinger v. Terrell*, 336 Ark. 423, 429 (1999). As with res judicata, collateral estoppel can only apply if the issue or issues sought to be precluded were actually litigated. *McWhorter v. McWhorter*, 2009 Ark. 458, *10 (2009). "Unlike res judicata, collateral estoppel does not require mutuality of parties before the doctrine is applicable." *Riverdale Dev. Co., LLC v. Ruffin Bldg. Sys., Inc.*, 356 Ark. 90, 96 (2004). Also unlike res judicata, collateral estoppel may apply to bar the relitigation of certain issues that were fully litigated in an earlier-filed suit, even when that suit was dismissed "without prejudice." *See Pohlmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999) ("[A]n issue actually decided in a non-merits dismissal is given preclusive effect in a subsequent action between the same parties (in the older terminology, the first adjudication creates a collateral estoppel)"); *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007) ("[T]he finality requirement for issue preclusion has become less rigorous."); *In re Nangle*, 274 F.3d 481, 484-85 (8th Cir. 2001) ("[R]ecent decisions have relaxed traditional views of the finality requirement in the collateral estoppel context by applying the doctrine to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief, let alone enforced.") (internal quotations and citations omitted).

    The state court's dismissal order, though made "without prejudice," contained the following three findings: (1) Morrand claimed no interest in the Property and therefore failed to state a claim for relief in state court, (2) GREC was not included as a party to the 2008 lease agreement, and (3) the purchase options included in the original 2005 lease agreement were amended by the SNDA. (Doc. 13-8). The Court finds that the doctrine of collateral estoppel gives preclusive effect to these

findings because the underlying issue of GREC's purchase option was already fully litigated in state court. Plaintiffs are therefore estopped from relitigating the findings the state court made in its order of dismissal.

Alternatively and additionally, the Court agrees with and adopts the state court's finding that the SNDA amended the purchase options that were originally contemplated in the 2005 lease agreement. Specifically, the plain language of the SNDA rendered all options to purchase the mortgaged Property subordinate to Metropolitan's rights and subject to Metropolitan's final approval. (Doc. 13-3, pp. 1-2). The 2005 lease agreement also demonstrates that GREC never retained an independent right to purchase the Property. (Doc. 13-1, pp. 9-10). GREC's purchase option was a benefit conferred upon GM in exchange for GM's agreement to lease the Property, and the purchase option flowed directly from GM's rights as a tenant. *Id.* at p. 10.

Because the SNDA did not require HCH or Metropolitan to accept GREC's offer to purchase the Property, GREC has failed to state a claim for breach of contract justifying specific performance. GREC has also failed to demonstrate that HCH or Metropolitan engaged in any wrongdoing that violated GREC's rights, as the SNDA made any purchase option previously available to GREC subordinate to Metropolitan's mortgage and subject to Metropolitan's final approval, to the extent such a purchase option was even legally enforceable. Accordingly, GREC's claims against HCH and Metropolitan for deceit/constructive fraud, tortious interference with contract/business expectancy, and civil conspiracy are dismissed. GREC's request for a declaratory judgment of its purchase rights is denied as moot.

**IV.   Conclusion**

Defendants HCH and Metropolitan's motions to dismiss the amended complaint (Docs. 20

& 22) are **GRANTED** pursuant to Federal Rule of Civil Procedure 12(b)(6) for Plaintiffs' failure to state a claim upon which relief may be granted.  All other pending motions are **DENIED AS MOOT**.   This case is **DISMISSED WITH PREJUDICE**, and judgment will enter contemporaneously with this order.

      IT IS SO ORDERED this 21st day of August, 2013.

                                              */s/ P. K. Holmes,* III
                                              P.K. HOLMES, III
                                              CHIEF U.S. DISTRICT JUDGE